IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-03285-CMA-SKC

UNITED STATES OF AMERICA, for the use and benefit of RME LTD., LLC, *d/b/a* Elite Surface Infrastructure,

 Plaintiff,

v.

INTACT INSURANCE GROUP USA, LLC, *d/b/a* Intact Insurance Specialty Solutions, *f/k/a* The Guarantee Company of North America USA,

 Defendant,

and

INTACT INSURANCE GROUP USA LLC,

 Third Party Plaintiff/Counter Defendant,

v.

PERRY AND ASSOCIATES, INC.

 Third Party Defendant/Counter Claimant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO ALTER JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES**

---

This matter is before the Court on two motions: (1) Defendant Intact Insurance Group LLC's ("Intact") Motion to Alter Judgment (Doc. # 61) and (2) Plaintiff RME LTD., LLC's ("ESI") Motion for Attorney Fees (Doc. # 56). For the following reasons, the Court grants both motions.

## I.  **BACKGROUND**

The Court incorporates its recitation of the factual background of this case from its December 27, 2022 Order Granting Plaintiff's Motion for Summary Judgment (Doc. # 52). The Court will recite only the procedural history relevant to the instant motions.

This case was previously stayed pending arbitration between Plaintiff ESI, a subcontractor, and nonparty A4 Construction Company, Inc. ("A4"), the general contractor and principal of a payment bond issued by Intact associated with a federal construction project. (Doc. # 52 at 2.) In March 2022, the arbitrator issued a final award in favor of ESI and against A4 in the total amount of $526,483.39, including attorney fees of $61,036.50, plus interest. (*Id.* at 4.) ESI then filed an action to confirm the arbitration award against A4 in the District Court for El Paso County, Colorado. (*Id.* at 5.) On June 1, 2022, the District Court for El Paso County entered default judgment against A4 in the amount of $534,181.10, with interest at 8% per annum compounded annually. (*Id.*)

ESI also filed a Motion for Summary Judgment in the instant action against Intact. (Doc. # 33.) On December 27, 2022, the Court entered summary judgment in favor of Plaintiff ESI and against Defendant Intact on ESI's single claim for relief under the Miller Act. (Doc. # 52 at 18.) The Court ordered the Clerk of Court to enter judgment in favor of ESI in the amount of $526,483.39—the amount of the arbitration award—with interest at 8% per annum compounded annually beginning March 3, 2022, and continuing thereafter. (*Id.*)

Prior to this Court's summary judgment ruling, the clerk of the El Paso County District Court issued a Writ of Garnishment allowing ESI to garnish funds from A4's bank accounts in full or partial satisfaction of the arbitration award. (Doc. # 61-1.) Between the time when ESI filed its Motion for Summary Judgment in this suit, in June 2022, and the Court's December 2022 Order granting summary judgment, ESI garnished $337,294.42 from A4's bank accounts in partial satisfaction of the arbitration award ("Partial Recovery"). (Doc. # 61 at 4–5.) The Partial Recovery reduced the principal amount of the arbitration award to $189,188.97. (*Id.* at 5.) The interest owed on the arbitration award from March 3, 2022 (the date of the arbitration award) to July 9, 2022 (the date of the Partial Recovery) totaled $17,078.26. (*Id.*) Accordingly, at the time of the Partial Recovery, the remaining balance on the arbitration award was $206,267.23, with interest to accrue on this amount from July 30, 2022.

On January 31, 2023, after the Clerk entered judgment in the instant action in favor of ESI and against Intact, Intact issued payment to ESI in the amount of $215,298.36. (*Id.* at 6.) This amount included the balance of the arbitration award and the Final Judgment in this action, less the Partial Recovery; interest on this amount from July 30, 2022, through February 2, 2023; and ESI's costs, which the parties stipulated and the Clerk assessed on January 30, 2023. (*Id.*)

Now before the Court are two post-judgment motions: (1) Intact's Motion to Alter Judgment (Doc. # 61), and (2) ESI's Motion for Attorney Fees (Doc. # 56). The Court will begin with Intact's Motion.

3

## II.     INTACT'S MOTION TO ALTER JUDGMENT

In light of the Partial Recovery, Intact moves the Court to reduce the Final Judgment (Doc. # 53) to $206,267.23, with interest to run thereafter beginning on July 30, 2022. (Doc. # 61 at 8.) In addition, Intact requests that the Court deem the Final Judgment satisfied upon Intact's January 31, 2023 payment. (*Id.*)

Federal Rule of Civil Procedure 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> . . .
>
> **(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> **(6)** any other reason that justified relief.

The Court finds that Intact is entitled to a reduction of the Final Judgment pursuant to Fed. R. Civ. P. 60(b)(5) based on evidence showing that ESI received the Partial Recovery of $337,294.42 of garnished funds from A4's bank accounts on July 9, 2022. (Doc. # 61-2 at 1.) ESI does not object to Intact's calculations that the Final Judgment should be reduced to $206,267.23, with interest accruing from this amount beginning July 30, 2022. Further, the parties agree that Intact satisfied the Final Judgment, inclusive of interest, by making a payment of $215,298.36 on January 31, 2023. (Doc. # 61 at 6; Doc. # 63 at 3.) Aside from the pending issue of attorney fees, the Court therefore deems the Final Judgment satisfied.

Although ESI does not oppose the above relief, ESI asks the Court to hold that ESI is not prevented by claim or issue preclusion as to a future Miller Act claim against

4

Intact if the garnished funds of the Partial Recovery are "clawed back by A4 or a bankruptcy trustee" as a result of potential future bankruptcy proceedings. (Doc. # 63 at 3.) Intact did not file a Reply or otherwise respond to this request. Accordingly, the Court agrees with ESI and concludes that ESI is not precluded from filing a future Miller Act claim against Intact to recover the amount of the Partial Recovery of $337,294.42 if those garnished funds must be returned as a result of A4's bankruptcy proceedings.

### III.     ESI'S MOTION FOR ATTORNEY FEES

Next, the Court will address ESI's Motion to recover its reasonable attorney fees pursuant to Fed. R. Civ. P. 54(d) and D.C.COLO.LCivR 54.3. (Doc. # 56.) ESI contends that it is entitled to attorney fees (1) because of the existence of an enforceable provision in the subcontract ESI signed with A4 providing attorney fees to the prevailing party; and (2) due to Intact's "vexatiousness" in continuing to defend the instant action after the final arbitration award entered. (*Id.* at 8.) Intact disputes that ESI is entitled to attorney fees for either reason and argues that ESI's requested fees are not reasonable. (Doc. # 60.)

### A.     ESI IS ENTITLED TO ATTORNEY FEES

The Miller Act itself does not provide for the award of attorney fees to the prevailing party. *See F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 126 (1974). However, attorney fees may be awarded where there is a contractual agreement between the parties or where the opposing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See id.* at 126, 129. With respect to Miller Act claims against sureties, the Tenth Circuit has held that "a fee-

5

shifting provision between a subcontractor and the general contractor is enforceable against the surety." *United States ex rel. Rent It Co., Inc. v. Aetna Cas. & Sur. Co.*, 988 F.2d 88, 91 (10th Cir. 1993) (citing *United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987)). In evaluating a request for attorney fees, the court "has discretion to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable." *W. States*, 834 F.2d at 1548.

To begin, the Court finds that ESI is entitled to attorney fees from Intact pursuant to the fee-shifting provision in the subcontract between ESI and A4. (Doc. # 14-4 at 12.) In issuing the payment bond, Intact agreed to be "jointly and severally" bound with A4 for the penal sum of $8,872,741. (Doc. # 14-3 at 1.) Moreover, it is undisputed that the subcontract with A4 contains a fee-shifting provision awarding reasonable fees to the prevailing party. (Doc. # 14-4 at 12.) As such, ESI may recover attorney fees from Intact as the surety. *See W. States*, 834 F.2d at 1548 ("When the agreement between the contractor and the subcontractor provides for attorneys' fees, the subcontractor may recover from the contractor and its Miller Act surety consistent with the terms of that agreement.").

The Court is unpersuaded by Intact's argument that the fee-shifting provision in the subcontract is "unenforceable" on the basis that ESI already received attorney fees in the underlying arbitration. Intact argues that the fee-shifting provision "does not contemplate multiple, duplicative prosecutions of the same claim" and that allowing as such "would result in double recovery for ESI." (Doc. # 60 at 4.) The Court disagrees.

6

ESI had no choice but to pursue "duplicative" prosecutions against two separate parties in order to be made whole for its claim under the Miller Act. Allowing ESI to recover attorney fees in the instant action would not result in double recovery for ESI, but would instead enable ESI to recoup the separate attorney fees it was obliged to incur to receive the Partial Recovery from A4, as the principal, and the remainder from Intact, as the surety. Further, ESI provides no authority for its argument that the fee-shifting provision is "unenforceable" merely because ESI was also awarded fees for the distinct expenses it incurred in the underlying arbitration against A4. The Court therefore rejects Intact's arguments and finds that ESI is entitled to recover attorney fees for the instant action pursuant to the subcontract.

The Court also finds that ESI is entitled to recover attorney fees on the basis that Intact acted vexatiously and in bad faith when it continued to improperly defend this claim after the final arbitration award entered. "A vexatious claim or defense is one brought **or maintained** in bad faith. Bad faith may include conduct that is arbitrary, vexatious, abusive or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy." *Tobacco Co. v. Engida*, 611 F.3d 1209, 1219 (10th Cir. 2010) (emphasis added) (internal quotation and citation omitted). Critically, Intact requested to stay this case pending arbitration, represented to the Court that its liability "coincides with the liability of A4," and argued that a stay was necessary to "prevent the duplication of litigation and the possibility of inconsistent decisions." (Doc. # 16 at 3–4.) Yet, after the final award issued in ESI's favor, Intact reneged on its earlier positions and disputed the validity and enforceability of the

7

arbitration award. (Doc. # 34 at 5.) In this Court's Order granting summary judgment, the Court rejected Intact's arguments as "inconsistent," "without merit," and "plainly unfair to ESI and to the judicial process." (Doc. # 52 at 14–15.) As such, the Court concluded that Intact was judicially estopped from contesting the arbitration award and granted summary judgment in ESI's favor. (*Id.*) For these reasons, the Court agrees with ESI that Intact engaged in bad faith by improperly defending the claim after the final arbitration award entered and that ESI is therefore entitled to attorney fees.

**B.    REASONABLENESS OF FEES**

Because the fee-shifting provision in the subcontract provides that the prevailing party "shall be entitled to a **reasonable** award of attorney fees," (Doc. # 14-4 at 12) (emphasis added), the Court must evaluate whether ESI has sufficiently demonstrated that its proposed fees are reasonable. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1228–29 (10th Cir. 2009); *see also United States ex rel. Sun Const. Co., Inc. v. Torix Gen. Contractors, LLC*, No. 07-cv-01355-LTB-MJW, 2011 WL 3648287, at *2 (D. Colo. Aug. 18, 2011) ("[W]hen the contract specifies that the attorney fees must be reasonable, the burden remains with the party seeking the award of attorney fees to prove its reasonableness.").

Generally, the starting point for determining the reasonableness of attorney fees is the "lodestar"—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To determine the number of hours reasonably expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Case v. Unified*

8

*Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Next, the Court must consider whether counsel charged a reasonable hourly rate of compensation. *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983). "A reasonable rate is the prevailing market rate in the relevant community," *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996), based on "lawyers of comparable skill and experience practicing in the area in which the litigation occurs," *Ramos*, 713 F.2d at 555.

In its Motion, ESI asserts that its counsel at Sherman & Howard spent a total of 119.6 hours on this litigation, including 26.5 hours for Ryan J. Klein (equity partner) at a rate of $585 per hour, 52.2 hours for Blair Carter (associate attorney) at a rate of $380 per hour, 20.3 hours for Stephen Robin (associate attorney) at a rate of $395 per hour, 2.3 hours for Allison Burke (associate attorney) at a rate of $435 per hour, 17.7 combined hours for Christopher Kenney and Riley Bordon (summer associates) at a rate of $305 per hour, and .6 hours for Peter Cal (equity partner) at a rate of $650 per hour. (Doc. # 56 at 13.) In its Reply, ESI requests fees for an additional 19.3 hours expended since the filing of the Motion, including 1.9 hours for Mr. Klein and 17.4 hours for Ms. Carter. (Doc. # 62 at 8–9.)

In response, Intact contends that both the hours and hourly rates of ESI's counsel are unreasonable. (Doc. # 60 at 5.) First, with respect to the number of hours, Intact argues that ESI's counsel's work on this case was limited to the Complaint (Doc. # 1), ESI's Motion for Summary Judgment and Reply (Docs. ## 33, 38), three joint

status updates (Docs. # 21, 23, 50), the instant Motion for Attorney Fees (Doc. # 56), and basic discovery requests (16 pages). (Doc. # 60 at 6.) Intact asserts that the hours spent on these tasks is unreasonable because "most of these documents contained largely duplicative information that was copied from prior documents filed in this matter and/or the arbitration." (*Id.*) ESI disagrees and states that it was forced to incur additional attorney fees, file a Motion for Summary judgment, and continue this litigation because of Intact's failure to pay the final award after arbitration. (Doc. # 62 at 6.)

In evaluating the reasonableness of hours expended, the Court considers "the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." *Ramos*, 713 F.2d at 554. The Court finds that ESI was required to expend more hours on this litigation as a result of Intact's "maneuvering," including Intact reversing course and contesting the enforceability of the arbitration award after requesting a stay purportedly for the issue of liability to be resolved at arbitration. Further, although Intact urges that "careful scrutiny of the number of attorneys, hourly rate, and total number of hours reported by ESI's counsel will reveal a substantial level of overworking, overbilling, and unnecessary duplication," Intact does not point to a single time entry that shows overworking, overbilling, or duplication. (Doc. # 60 at 10.) Intact's vague and conclusory assertion that the time entries contain a "substantial" level of poor billing judgment, without any specific or identified examples, is entirely unhelpful.

The Court has reviewed the detailed time entries provided by ESI's counsel (Docs. ## 56-10, 62-2) and finds that the hours are reasonable. The Court disagrees

with Intact that the "number of attorneys" staffed on this case demonstrates that the hours are unreasonable. Rather, the Court finds that ESI's counsel exercised billing judgment and reduced its fees by limiting the hours expended by equity partners Mr. Klein and Mr. Cal and delegating the majority of legal tasks to members of the legal team with lower hourly rates. *Cf. Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA) Inc.*, 958 F. Supp. 2d 1238, 1258–59 (D. Colo. 2013) (reducing partner fees after finding there was an "over-reliance on partners, rather than lower-cost associates, to prepare many aspects of the case" that was "not justified by the complexity of the case"). Further, the Court notes that ESI's counsel redacted all of its hours spent on the underlying arbitration with A4, and the Court has not identified duplicative entries for the work spent on the instant action.

Next, the Court finds that the billing rates requested are reasonable when compared with the rates approved by judges in this district. *See, e.g.*, *ORP Surgical, LLP v. Howmedica Osteonics Corp.*, No. 20-cv-01450-RBJ, 2022 WL 18456142, at *5 (D. Colo. Dec. 27, 2022) (finding Sherman & Howard rates of $650 per hour for members/partners and $575 and $380 per hour for members to be "within the range of rates approved as reasonable by several judges in this district"); *Snyder v. ACORD Corp.*, No. 14-cv-01736-JLK, 2019 WL 319407, at *8–9 (D. Colo. Jan. 24, 2019) (approving rates of $625 per hour for partners, $425 per hour for associates, and $200 for paralegals); *Biax Corp. v. NVIDIA Corp.*, No. 09-cv-01257-PAB-MEH, 2013 WL 4051908, at *6–7 (D. Colo. Aug. 12, 2013) (finding reasonable rates of approximately $510 to $750 per hour for partners and $425 to $530 per hour for associates). Although

11

Intact generally disputes the reasonableness of the hourly rates in this case, Intact provides no authority supporting its position.

In sum, the Court finds that ESI's requested attorney fees of $59,419.50 are reasonable and awards the same.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendant Intact's Motion to Alter Judgment (Doc. # 61) is GRANTED;

- The Clerk of Court is directed to amend the final judgment to reflect that judgment is entered in favor of Plaintiff and against Defendant in the amount of $206,267.23, with interest at 8% per annum compounded annually beginning July 30, 2022. The judgment, with the exception of attorney fees, is deemed satisfied by Defendant's payment of $215,298.36 to Plaintiff on January 31, 2023. It is

- FURTHER ORDERED that Plaintiff's Motion for Attorneys' Fees (Doc. # 56) is GRANTED.

- Accordingly, the final judgment shall also be amended to include an award to Plaintiff of attorney fees in the amount of $59,419.50 against Intact.

DATED:  April 7, 2023

BY THE COURT:

*Christine M. Arguello*
CHRISTINE M. ARGUELLO
Senior United States District Judge